WILLIAM O'MULCAHEY *vs.* WILLIAM GRAGG and others.

December 20, 1890.

**Estates of Decedents—Time for Presenting Claims.**—In 1880, there was no statute which fixed a limit of time within which a claim against the estate of a deceased person should be presented.

**Same—Laches as a Bar.**—In such a case, the equitable doctrine of laches, as a reason for denying a remedy, applies. Following and applying *State* v. *Probate Court of Ramsey Co.*, 40 Minn. 296.

**Same—Analogy of Limitation of Action.**—The statute limiting the time for bringing actions to recover such claims would furnish a limit of time after the death within which the claims should be presented.

Appeals by defendants, heirs-at-law of Levi Gragg, deceased, from two judgments of the district court for Ramsey county, *Otis*, J., presiding, reversing orders of the probate court of Dakota county, and allowing the claims mentioned in the opinion (for $2,479.47 and $142.30, respectively,) in favor of plaintiff as assignee of the original claimants. The appeals from the probate court were on questions of both law and fact, the place of trial was by stipulation changed to Ramsey county, and in each case a jury was waived.

*Williams, Goodenow & Stanton*, for appellants.

*Geo. N. Baxter*, for respondent.

GILFILLAN, C. J.[1] These are two appeals from judgments of the district court allowing (on appeals from the probate court) two different claims against the estate of Levi Gragg, one accruing to one Marfield, the other to one Spalding. One of the claims arose against Gragg in the state of New York in 1849, the other passed into a judgment against him before a justice of the peace in the state of Illinois in 1858. Gragg left the state of New York in 1853, and never returned, and he died in 1866 in the state of Missouri. In 1879, an administrator of his estate was appointed by the probate court in Dakota county, this state. In 1880, the claims were presented for allowance to the probate court, so that in one case 31 years, and in the other at least 22 years, elapsed from the time the claim arose before it was presented, and as to each 14 years elapsed from the time of Gragg's death before the claim was so presented. It appears in one of the cases that Gragg lived for three or four months, during either the year 1855 or the year 1856, in this state, and that he lived at times, after he left New York, in Illinois, Indiana, and Missouri, but how long in any one of them does not appear. The claims are opposed, *first*, on the ground that they are barred by the statute of limitations; *second*, that they come under the denomination of stale claims, or claims upon which the holder will be denied a remedy because of his delay or laches in seeking it. The claims were certainly not barred by the statute of this state, as they came within the exception in Gen. St. 1878, *c.* 66, § 15. It is not

[1] Dickinson, J., took no part in this case.

claimed that they were barred by the statute of any other state, so as to come within the provisions of section 16, c. 66, unless the claim arising in the state of New York was barred by the statute of that state. It certainly does not seem clear that it was so barred, and the view that we take of the second ground of opposition to the claims, and which is applicable to both alike, renders it unnecessary to determine whether it was or not.

The doctrine of laches, as a reason for the denial of a remedy, applies peculiarly to equitable rights and equitable remedies. Where one is seeking a legal remedy upon a legal right, as in an ordinary action at law, we have held that the remedy will be barred only by the statute of limitations. *Morris* v. *McClary*, 43 Minn. 346, (46 N. W. Rep. 238.) The statute of limitations did not apply to proceedings to enforce claims against the estates of deceased persons, but only to actions. Section 18, c. 66, related to actions which might be brought by or against the representatives of such persons, and not to the proceedings to establish claims to be paid out of the estate. Instances of actions which might under that section be brought against the representatives are actions for specific performance, replevin, and the like. But actions, unless pending at the time of death, upon money demands are not allowed. Such claims must be presented and proved in the manner prescribed by the statute. So that, when not fixed by the probate court limiting the time for presenting claims, there was, prior to the Probate Code, no statute which barred a claim, not barred at the time of the death, no matter how long after the death it might be presented. In these cases the claims were not presented till 14 years after the death. So far as any statute bars the right to present them, it would have been the same had they been presented 50 years after the death. It is not necessary to discuss whether and wherein the statutory proceedings to enforce claims against the estates of decedents are more nearly analogous to actions at law or to suits in equity; for this court has decided that the equitable doctrine of laches as a reason for denying a remedy is applicable to such proceedings. *State* v. *Probate Court of Ramsey Co.*, 40 Minn. 296, (41 N. W. Rep. 1033.) That was the case of an application for license to sell real estate to satisfy claims, and the court said: "While

there does not appear to be any express statutory limitation upon the power of the probate court to license the sale to pay debts at any time during the pendency of the administration, * * * yet, unless clear and satisfactory reasons appear, such an application should not be granted after long delay, and, in analogy to the case of other judgment liens, the liens of creditors should not be enforced after the expiration of 10 years;" and it further said that it would not interfere with the refusal of the probate court to license a sale after an unreasonable delay on the part of the creditors and administrator, though less than 10 years had elapsed. This is substantially the rule upon which courts. of equity acted in denying a remedy on the ground of laches. Those courts adopted generally, as a limit of time, the limit of the statute in analogous cases, but, according to the circumstances of the particular case, sometimes denied the remedy though a shorter time had elapsed.

Though an application for leave to sell real estate to pay debts, after long delay, may present more forcibly the injustice that may be done by not putting some limit to the time beyond which it ought not to be granted, the same reasons for limiting the time apply to the matter of presenting claims, with other reasons that do not exist in respect to a claim after it has been presented and allowed. 'The presentation and allowance of a claim opens the way to unseat title to real estate. To allow a claim 30 years old (or twice as old perhaps) to be presented against an estate, when those interested in the estate would in all probability be powerless to defend against it, and to permit it to pass into what is equivalent to a judgment, to satisfy which it may be necessary that not only the personal but the real estate shall be resorted to, is more dangerous, more liable to work injustice, than to permit real estate to be sold to satisfy a claim (perhaps not a year old when presented) more than 10 years after the claim is allowed. And if a creditor whose claim has been allowed may by delay lose his right to have real estate sold to satisfy his debt, there can be no reason why a creditor may not by delay lose his right to present his claim for allowance. He is as much chargeable with neglect in case of failure to have an administrator appointed, or to have commissioners to audit claims appointed, or the time fixed for

presenting claims, as any one. He may have these things done. He has the same right in respect to them as in respect to the license to sell real estate after his claim is allowed. We do not hesitate to apply to the matter of presenting claims the rule applied in the case cited, to wit, that one may lose his remedy by delay in applying for it. Following the example of courts of equity, the time allowed by the statutes of limitations to actions to recover such claims, being most nearly analogous, suggests the proper rule as to the time within which claims must be presented, and we adopt such time as the limit.

The judgments of the district court are reversed, and that court will affirm the orders of the probate court appealed from.